

**ORDERED in the Southern District of Florida on January 19, 2010.**

John K. Olson, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| PROTECTIVE PRODUCTS OF AMERICA, INC. et al.,[1] | Case No. 10-10711-BKC-JKO |
| Debtors. | Jointly Administered |

_____/

**ORDER (A) APPROVING COMPETITIVE BIDDING AND
SALE PROCEDURES; (B) APPROVING FORM AND MANNER OF NOTICES;
(C) APPROVING FORM OF ASSET PURCHASE AGREEMENT, INCLUDING
BREAK-UP FEE AND EXPENSE REIMBURSEMENT; (D) SCHEDULING DATES TO
CONDUCT AUCTION AND HEARING TO CONSIDER FINAL APPROVAL OF SALE,
INCLUDING TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; (E)APPROVING SALE OF SUBSTANTIALLY ALL THE DEBTORS'
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND INTERESTS; AND (F) GRANTING RELATED RELIEF**

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Protective Products of America, Inc. (9709); CPC Holding Corporation of America (8086); Ceramic Protection Corporation of America (7305); Protective Products International Corp. (7373); and Protective Products of North Carolina, LLC (0927).  The mailing address of each of the Debtors is 1649 Northwest 136th Avenue, Sunrise, Florida 33323.

**THIS CAUSE** came before the Court on January 14, 2010 at 3:00 p.m. in Fort Lauderdale, Florida upon the *Emergency Motion For Entry of Order (A) Approving Competitive Bidding and Sale Procedures; (B) Approving Form and Manner of Notices; (C) Approving Form of Asset Purchase Agreement, Including Break-up Fee and Expense Reimbursement; (D) Scheduling Dates To Conduct Auction and Hearing to Consider Final Approval of Sale, Including Treatment of Executory Contracts and Unexpired Leases; (E) Approving Sale of Substantially All The Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests; and (E) Granting Related Relief* (the "Bid Procedures Motion")[1] [D.E. 19] filed by PROTECTIVE PRODUCTS OF AMERICA, INC., ("PPA") and each of the other above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Companies"). Having reviewed the Bid Procedures Motion, and the record in these cases, having considered the statements of counsel for the Debtors and the Proposed Purchaser (defined below) the Court finds that establishing procedures for a sale of the Acquired Assets (defined below), in accordance with the provisions contained in this Order, is in the best interests of the Debtors' estates. Accordingly,

---

[1]   Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion, the bidding procedures attached hereto as Exhibit 1 (the "Bidding Procedures") or that certain Asset Purchase Agreement dated as of January 13, 2010 among Protective Products Enterprises, Inc., as purchaser (the "Proposed Purchaser"), and Protective Products of America, Inc. and the other sellers named therein, as sellers thereto (the "Asset Purchase Agreement"), as applicable.

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      The Court has jurisdiction over the Motion and the transaction contemplated by the Asset Purchase Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      The statutory bases for the relief requested in the Motion are (i) sections 105, 363, 364 and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"); (ii) Bankruptcy Rules 2002(a)(2), 6004, 6006 and 9014; and (iii) Rule 6004-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules").

D.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Sale Hearing.

E.      The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of substantially all of the Debtors' assets (the "Acquired Assets"), and the Bidding Procedures to be employed in connection therewith.

F.      The Debtors have articulated good and sufficient reasons for the Court to: (i) approve the Bidding Procedures; (ii) set the Sale Hearing and approve the manner of notice of the Motion and the Sale Hearing; (iii) approve the procedures for the assumption and assignment of certain executory contracts and unexpired leases (collectively, the "Assumed Executory

2

Contracts"), including notice of proposed cure amounts; and (iv) grant certain bid protections as provided in the Asset Purchase Agreement and in the Bidding Procedures Order.

G.    The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

H.    The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Acquired Assets.

I.    The Breakup Fee and the Expense Reimbursement (collectively, the "Bid Protections") shall be paid in accordance with the Asset Purchase Agreement, and (i) if triggered, shall be deemed an actual and necessary cost and expense of preserving the Debtors' estates, within the meaning of sections 364(c)(1) and 503(b)(1) of the Bankruptcy Code, payable solely as provided in sections 8.2(d)(iii)(B) and (C) of the Asset Purchase Agreement, (ii) are of substantial benefit to the Debtors' estates, (iii) are reasonable and appropriate, including in light of the size and nature of the sale and the efforts that have been or will be expended by the Proposed Purchaser notwithstanding that the proposed sale is subject to higher and better offers for the Acquired Assets, (iv) were negotiated by the parties at arm's-length and in good faith, and (v) are necessary to ensure that the Proposed Purchaser will continue to pursue its proposed acquisition of the Acquired Assets contemplated by the Asset Purchase Agreement.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

1.    The Motion is GRANTED.

2.    All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3

3.      The Bidding Procedures, attached hereto as <u>Exhibit 1</u>, are hereby approved in their entirety.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

4.      The Debtors may sell the Acquired Assets and enter into the transactions contemplated by the Asset Purchase Agreement by conducting an Auction in accordance with the Bidding Procedures.

5.      The Auction shall take place on February 18, 2010 at 10:00 a.m. (prevailing Eastern Time) at the offices of Berger Singerman, P.A., 350 East Las Olas Blvd., Suite 1000, Fort Lauderdale, 33301, or such other place and time as the Debtors shall notify all Qualified Bidders, including the Proposed Purchaser, any official committee of unsecured creditors appointed in these chapter 11 cases (the "<u>Committee</u>"), counsel for the Proposed Purchaser and other invitees.  The Auction shall be conducted in accordance with the Bidding Procedures.

6.      The Sale Hearing shall be held before the Court on February 19, 2010 at 9:30 a.m. (prevailing Eastern Time), or at such earlier date as counsel and interested parties may be heard.

7.      Objections, if any, to the sale of the Acquired Assets and the transaction contemplated by the Asset Purchase Agreement, or the relief requested in the Motion must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division, 299 East Broward Boulevard, Room 112, Fort Lauderdale, Florida 33301 (or filed electronically via CM/ECF), on or before 4:00 p.m. (prevailing Eastern Time) on February 15, 2010 (the "<u>Sale Objection Deadline</u>"); and (d) be served upon (i) counsel to the Debtors, Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn:  Jordi Guso, Esq.; (ii) counsel to the Committee; (iii) counsel to the Proposed Purchaser, Kirkland &

4

Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Patrick Nash and Paul Wierbicki**,** and Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida 33131, Attn: Scott Grossman; and (iv) the Office of the United States Trustee, in each case, so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day.

8.      The notice, substantially in the form attached hereto as <u>Exhibit 2</u> (the "<u>Sale Notice</u>"), is hereby approved.

9.      On or before three (3) business days after entry of this Bidding Procedures Order, the Debtors will cause the Sale Notice to be sent by first-class mail postage prepaid, to the following: (a) all creditors or their counsel known to the Debtors to assert a lien (including any security interest), claim, right, interest or encumbrance of record against all or any portion of the Acquired Assets; (b) the Office of the United States Trustee; (c) the Environmental Protection Agency; (d) all applicable federal, state and local taxing and regulatory authorities of the Debtors or recording offices or any other governmental authorities that, as a result of the sale of the Acquired Assets, may have claims, contingent or otherwise, in connection with the Debtors' ownership of the Acquired Assets or have any known interest in the relief requested by the Motion; (e) the state and local environmental agencies in the jurisdictions where the Debtors own or lease real property; (f) counsel to the Proposed Purchaser; (g) counsel to the prepetition and postpetition secured lenders; (h) the United States Attorney's office; (i) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002; (j) counsel to the Committee; (k) all parties to any litigation involving the Debtors; (l) all of the Debtors' current employees and former employees, if any, who were terminated immediately prior to the commencement of these cases, (m) all counterparties to any executory contract or unexpired lease of the Debtors; (n) all

K&E 16139699.6

2560075-2

other known creditors and interest holders of Debtors; and (o) all potential bidders previously identified or otherwise known to the Debtors.

10.    In addition to the foregoing, as soon as practicable, but in any event no later than five (5) business days after the entry of this Bidding Procedures Order, the Debtors shall publish the Sale Notice (modified for publication, as necessary) in *The Wall Street Journal*, national edition.

11.    The notice of potential assumption and assignment of the Scheduled Contracts, substantially in the form attached hereto as Exhibit 3 (the "Cure Notice"), is hereby approved.

12.    On or before three (3) business days after the entry of this Bidding Procedures Order, the Debtors shall serve by first class mail or hand delivery the Cure Notice on all non-Debtor parties to the Scheduled Contracts.  The Cure Notice shall identify the Scheduled Contract and provide the cure amount that the Debtors believe must be paid to cure all prepetition defaults under the Scheduled Contracts (the "Cure Amounts").

13.    Unless the non-Debtor party to a Scheduled Contract files an objection (the "Cure Amount Objection") to its scheduled Cure Amount, the assumption and assignment to the Proposed Purchaser of the Scheduled Contracts or the ability of the Proposed Purchaser to provide adequate assurance of future performance by the Sale Objection Deadline and serves a copy of the Cure Amount Objection so as to be received no later than the Sale Objection Deadline on the same day to:  (a) the Debtors, Protective Products of America, Inc., 1649 Northwest 136th Avenue, Sunrise, Florida, 33323; (b) counsel for the Debtors, Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn:  Jordi Guso, Esq.; (c) counsel to the Committee; (d) counsel to the Proposed Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn:  Patrick Nash and Paul

6

Wierbicki and Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida 33131, Attn: Scott Grossman; and (e) the Office of the United States Trustee; such non-Debtor party should be forever barred and estopped from objecting (i) to the Cure Amount and from asserting that any additional amounts are due or defaults exist, (ii) that any conditions to assumption and assignment must be satisfied under such Scheduled Contract before it can be assumed and assigned to the Proposed Purchaser or that any required consent to assignment has not been given or (iii) that the Proposed Purchaser has not provided adequate assurance of future performance.

14.    If the Proposed Purchaser is not the Successful Bidder, the non-Debtor parties to the Scheduled Contracts shall have until the Sale Hearing (the "Adequate Assurance Objection Deadline") to object to the assumption and assignment of such Scheduled Contract solely on the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (an "Adequate Assurance Objection"); provided, however, that if the Proposed Purchaser is the Successful Bidder, all Adequate Assurance Objections must be filed by the Sale Objection Deadline; provided, further, however, that all objections to the assumption and assignment of Scheduled Contracts that do not relate to the issue of whether the Successful Bidder can provide adequate assurance of future performance must be filed by the Sale Objection Deadline.

15.    In the event of a dispute regarding:  (a) any Cure Amount with respect to any Scheduled Contract; (b) the ability of the Successful Bidder (including the Proposed Purchaser) to provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code, if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable after

the Closing and following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors are authorized to settle any dispute regarding the amount of any Cure Amount or assignment to the Successful Bidder (including the Proposed Purchaser) without any further notice to or action, order or approval of the Court.

16.    Within two (2) business days after the Closing Date, the Debtors will file a complete list of the Scheduled Contracts that were assumed and assigned as Assumed Executory Contracts, as of the Closing Date, to the Proposed Purchaser or to the Successful Bidder, to the extent that the Successful Bidder is not the Proposed Purchaser.  In addition, the Debtors will file a complete list of Designated Contracts.

17.    The procedures with respect to the assignment and assumption or rejection of Designated Contracts are approved in all respects.

18.    The notice of assumption and assignment of the Scheduled Contracts, substantially in the form attached hereto as Exhibit 4 (the "Assumption Notice"), is hereby approved.

19.    To the extent that the Proposed Purchaser requests assumption and assignment of any Designated Contract after the Closing Date, the Debtors shall serve the non-Debtor counterparty to such Designated Contract with the Assumption Notice.  As soon as practicable after a period of ninety (90) days following the closing date during which the Proposed Purchaser shall not seek to reject the Designated Contracts (the "Contract Retention Period"), the Debtors shall file a final and complete list of all Assumed Executory Contracts.

20.     The Sale Hearing may be continued, from time to time, without further notice to creditors or other parties in interest other than by announcement of said continuance before the Court on the date scheduled for such hearing or in the hearing agenda for such hearing.

21.     The Asset Purchase Agreement, as modified on the record with respect to the consents to be obtained from any Government Authority as a condition to Closing, is approved n all respects.  Section 9.2 of the Asset Purchase Agreement is hereby approved and binding upon the Debtors and their estates.  In connection therewith, the Debtors' obligation to pay the Bid Protections, as provided by the Asset Purchase Agreement, shall survive termination of the Asset Purchase Agreement and, until paid in accordance with the Asset Purchase Agreement, shall constitute a superpriority administrative expense claim in favor of the Proposed Purchaser having superpriority under section 364(c) of the Bankruptcy Code over any and all administrative expenses of the kind specified in sections 503(b) and 507(c) of the Bankruptcy Code, and which shall be senior to any and all claims of any creditors of or holders of equity interests in Sellers, including prepetition and postpetition amounts owing to Sellers' prepetition and postpetition senior secured lenders, and which, in accordance with the bidding procedures, shall be a "carve out" from the collateral securing the obligations owed to the Debtors' prepetition and postpetition senior secured lenders, and which shall be payable solely as provided in sections 8.2(d)(iii)(A) and (B) of the Asset Purchase Agreement.  To the extent that the Proposed Purchaser is not the Successful Bidder, the Successful Bidder is authorized and directed to pay the Bid Protections directly to the Proposed Purchaser by wire transfer of immediately available good funds to an account specified by the Proposed Purchaser at the Closing of any Competing Transaction with the Successful Bidder.  To the extent for any reason the Successful Bidder fails to pay the Bid Protections directly to the Proposed Purchaser, the Debtors are authorized and

9

directed to pay the Bid Protections to the Proposed Purchaser in accordance with the terms of the Asset Purchase Agreement without further order of the Court.

22.    For the reasons announced on the record, which are incorporated herein, the Bid Protections are approved based on the unique facts and circumstances of these cases, and the complexity of the contemplated transactions.

23.    Except for the Proposed Purchaser, no other party submitting an offer or Bid for the Acquired Assets or a Qualifying Bid shall be entitled to any expense reimbursement, breakup, termination or similar fee or payment.

24.    Except as otherwise provided in the Asset Purchase Agreement or this Bidding Procedures Order, the Debtors further reserve the right as they may reasonably determine to be in the best interests of their estates, in consultation with the Committee, to:  (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) remove some or all of the Acquired Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.

K&E 16139699.6

2560075-2

25.     The Proposed Purchaser shall have standing to contest the Debtors' selection of the Highest and Best Bid.

26.     To the extent that any chapter 11 plan confirmed in these cases or any order confirming any such plan or any other order in these cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code) alters, conflicts with or derogates from the provisions of this Bidding Procedures Order, the provisions of this Bidding Procedures Order shall control.  The Debtors' obligations under this Bidding Procedures Order, the provision of this Bidding Procedures Order and the portions of the Asset Purchase Agreement pertaining to the Bidding Procedures shall survive confirmation of any plan of reorganization or discharge of claims thereunder and shall be binding upon the Debtors, and the reorganized or reconstituted debtors, as the case may, after the effective date of a confirmed plan or plans in the Debtors' cases (including any order entered after any conversion of these cases to cases under chapter 7 of the Bankruptcy Code).

27.     The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are hereby waived and this Bidding Procedures Order shall be effective immediately upon its entry.

28.     All time periods set forth in this Bidding Procedures Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

30.     The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Bidding Procedures Order.

# # #

11

Submitted by:

Jordi Guso, Esq.
Berger Singerman, P.A.
200 South Biscayne Boulevard, Suite 1000
Miami, FL  33131
Tel.:  (305) 755-9500
Fax:  (305) 714-4340
Email:  jguso@bergersingerman.com

Copy furnished to:
Jordi Guso, Esq.
*(Attorney Guso is directed, pursuant to Local Rule 5005-1, to serve conformed copies of this Order upon all parties in interest, and to file a Certificate of Service with the Court confirming such service.)*

K&E 16139699.6

2560075-2

**EXHIBIT 1 to the Bidding Procedures Order**

**(Bidding Procedures)**

# BIDDING PROCEDURES[1]

By the Bidding Procedures Motion dated January 13, 2010, Protective Products of America, Inc., and its affiliated debtors and debtors in possession (collectively, the "Debtors"),[2] sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale of substantially all of their assets (the "Acquired Assets") described in the Asset Purchase Agreement by and among Protective Products Enterprises, Inc., as purchaser (the "Proposed Purchaser"), and Protective Products of America, Inc. and other sellers named therein, as sellers thereto, dated as of January 13, 2010 (the "Asset Purchase Agreement"), a copy of which is attached to the proposed Sale Order as Exhibit 1, attached as Exhibit B to the Bidding Procedures Motion.

On January [__], 2010, the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") entered an order (the "Bidding Procedures Order"), which, among other things, authorized the Debtors to determine the highest or otherwise best price for the Acquired Assets through the process and procedures set forth below (the "Bidding Procedures").

## Marketing Process

### Contact Parties

The Debtors, in consultation with their investment banker Bayshore Partners, LLC ("Bayshore Partners") have developed a list of parties who the Debtors believe may potentially be interested in and who the Debtors reasonably believe would have the financial resources to consummate a competing transaction to that of the Proposed Purchaser (a "Competing Transaction"), which list includes both potential strategic investors and potential financial investors (each, individually, a "Contact Party", and collectively, the "Contact Parties"). The Debtors and Bayshore Partners are already in the process of contacting the Contact Parties to explore their interest in pursuing a Competing Transaction. The Contact Parties may include parties whom the Debtors or their advisors have previously contacted regarding a transaction, regardless of whether such parties expressed any interest, at such time, in pursuing a transaction. The Debtors will continue to discuss and may supplement the list of Contact Parties throughout the marketing process, as appropriate.

---

[1]   Capitalized terms used but not defined herein shall have the meanings set forth in the motion to approve these Bidding Procedures (the "Bidding Procedures Motion") or the Asset Purchase Agreement, as applicable.

[2]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Protective Products of America, Inc. (9709); CPC Holding Corporation of America (8086); Ceramic Protection Corporation of America (7305); Protective Products International Corp. (7373); and Protective Products of North Carolina, LLC (0927).   The mailing address of each of the Debtors is 1649 Northwest 136th Avenue, Sunrise, Florida 33323.

The Debtors may distribute to each Contact Party an "Information Package," comprising:

(a)     A cover letter;

(b)     A copy of these Bidding Procedures; and

(c)     A copy of a confidentiality agreement.

### *Access to Diligence Materials*

To participate in the bidding process and to receive access to due diligence (the "Diligence Materials"), a party must submit to the Debtors an executed confidentiality agreement in the form and substance satisfactory to the Debtors and evidence demonstrating the party's financial capability with respect to the Competing Transaction as determined by the Debtors.

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Investor." All due diligence requests must be directed to Bayshore Partners.

For any Preliminary Interested Investor who is a competitor of the Debtors or is affiliated with any competitor of the Debtors, the Debtors reserve the right to withhold any Diligence Materials that the Debtors, in their sole discretion, determine are business-sensitive or otherwise not appropriate for disclosure to such Preliminary Interested Investor.

### **Auction Qualification Process**

To be eligible to participate in the Auction (defined below), each offer, solicitation or proposal (each, a "Bid"), and each party submitting such a Bid (each, a "Bidder"), must be determined by the Debtors to satisfy each of the following conditions:

(d)     Good Faith Deposit:  Each Bid must be accompanied by a deposit in the amount of $500,000 to an interest bearing escrow account to be identified and established by the Debtors (the "Good Faith Deposit").  The deposit made by the Proposed Purchaser pursuant to the Asset Purchase Agreement is a Good Faith Deposit.

(e)     Same or Better Terms:  The Bid must be on terms that, in the Debtors' business judgment, are substantially the same or better than the terms of the Asset Purchase Agreement.  A Bid must include executed transaction documents pursuant to which the Bidder proposes to effectuate the Competing Transaction (the "Modified Asset Purchase Agreement").  A Bid shall include a copy of the Asset Purchase Agreement marked to show all changes requested by the Bidder (including those related to purchase price); provided, however, that the terms of the Modified Asset Purchase Agreement are substantially similar, the same or better than the terms of the Asset Purchase Agreement.  A Bid must propose a Competing Transaction involving substantially all of the Debtors' assets or operations.  A Bid must propose a purchase price equal to or greater than the aggregate of the sum of (i) $8,000,000 in cash; (ii) the dollar value of the Breakup Fee in cash, (iii) the dollar value of the Expense Reimbursement in cash, and

2

(iv) $100,000 in cash. A Bid will not be considered by Sellers as qualified for the Auction if (i) such Bid contains additional representations and warranties, covenants, closing conditions, termination rights other than as may be included in this Agreement (it being agreed and understood that such Bid shall modify this Agreement as needed to comply in all respects with the Bidding Procedures Order and will remove provisions that apply only to the Proposed Purchaser as the stalking horse bidder such as breakup fee and expense reimbursement); (ii) such Bid is not received by Sellers and Purchaser in writing on or prior to the Bid Deadline, and (iii) such Bid does not contain evidence that the Person submitting it has received unconditional debt and/or equity funding commitments (or has unrestricted and fully available cash) sufficient in the aggregate to finance the purchase contemplated thereby, including proof of deposit into escrow of no less than $500,000 in cash. A Bid must obligate the Bidder to pay, to the extent provided in the Asset Purchase Agreement, all Cure Amounts and any cure amounts with respect to the Designated Contracts for which an Assumption Notice is provided. The Competing Transaction Documents shall also identify any executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it pursuant to the Competing Transaction.

(f)     <u>Corporate Authority</u>: The Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate authorization to consummate the proposed Competing Transaction; <u>provided</u>, <u>however</u>, that, if the Bidder is an entity specially formed for the purpose of effectuating the Competing Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Competing Transaction by the equity holder(s) of such Bidder.

(g)     <u>Proof of Financial Ability to Perform</u>: The Bid must include written evidence that the Debtors reasonably conclude demonstrates that the Bidder has the necessary financial ability to close the Competing Transaction and provide adequate assurance of future performance under all contracts to be assumed and assigned in such Competing Transaction. Such information must include, *inter alia*, the following:

   (i)     contact names and numbers for verification of financing sources;

   (ii)    evidence of the Bidder's internal resources and proof of unconditional debt or equity funding commitments, from a recognized banking institution in the amount of the cash portion of such Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Bid, in each case, as are needed to close the Competing Transaction;

   (iii)   the Bidder's current financial statements (audited if they exist); and

   (iv)    any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors

3

demonstrating and in accordance with the Asset Purchase Agreement that such Bidder has the ability to close the Competing Transaction; <u>provided</u>, <u>however</u>, that the Debtors shall determine, in their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Bidder's financial qualifications.

(h)     <u>Contingencies</u>:    A Bid may not (i) contain representations and warranties, covenants, termination rights, financing, due diligence contingencies other than as may be included in the Asset Purchase Agreement (it being agreed and understood that such Bid shall modify the Asset Purchase Agreement as needed to comply in all respects with the Bidding Procedures Order (including removing any termination rights in conflict with the Bidding Procedures Order) and will remove provisions that apply only to the Proposed Purchaser as the stalking horse bidder, such as breakup fee and expense reimbursement) and (ii) be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence, but may be subject to the accuracy in all material respects of specified representations and warranties at the Closing.

(i)     <u>Irrevocable</u>:  A Bid must be irrevocable through the Auction, <u>provided</u>, <u>however</u>, that if such Bid is accepted as the Successful Bid or the Backup Bid (each as defined herein), such Bid shall continue to remain irrevocable, subject to the terms and conditions of the Bidding Procedures.

(j)     <u>Bid Deadline</u>:      Regardless of when a party qualifies as a Preliminarily Interested Investor, the following parties must receive a Bid in writing, on or before February 15, 2010 at 4:00 p.m. (prevailing Eastern Time) or such earlier date as may be agreed to by the Debtors (the "<u>Bid Deadline</u>"): (i) the Debtors, Protective Products of America, Inc., 1649 Northwest 136th Avenue, Sunrise, Florida, 33323; (ii) counsel for the Debtors, Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn:  Jordi Guso, Esq.; (iii) counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (the "<u>Committee</u>"); (iv) counsel to the Proposed Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick Nash and Paul Wierbicki and Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida 33131, Attn: Scott Grossman; and (v) Bayshore Partners, 401 East Las Olas Boulevard, Suite 1160, Fort Lauderdale, Florida 33301, Attn: Scott J. Saunders and Steve Zuckerman.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "<u>Qualified Bid</u>," and such Bidder shall constitute a "<u>Qualified Bidder</u>." Notwithstanding anything herein to the contrary, the Asset Purchase Agreement submitted by the Proposed Purchaser shall be deemed a Qualified Bid, and the Proposed Purchaser is a Qualified Bidder.  In accordance with the Bidding Procedures, the Proposed Purchaser will receive, from each Bidder, a copy of any Bids at the time such Bid is submitted to the Debtors.  The Debtors

4

shall inform counsel to the Proposed Purchaser whether the Debtors will consider such Bids to be Qualified Bids within one (1) calendar day after the Bid Deadline.

## Auction

If one or more Qualified Bids (other than the Asset Purchase Agreement submitted by the Proposed Purchaser) are received by the Bid Deadline, the Debtors will conduct an auction (the "Auction") to determine the highest and best Qualified Bid.  This determination shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid to the estate, including, among other things, the following:  (a) the amount and nature of the consideration; (b) the number, type and nature of any changes to this Agreement requested by each Bidder; (c) the extent to which such modifications are likely to delay closing of the sale of the Acquired Assets and the cost to Sellers of such modifications or delay; (d) the total consideration to be received by Sellers; (e) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (f) the net benefit to the estate, taking into account Purchaser's rights to the Breakup Fee and Expense Reimbursement; (g) the impact of the transaction on any actual or potential litigation; and (h) the net after-tax consideration to be received by the Debtors' estates (for the avoidance of doubt, any Bid made by the Proposed Purchaser at the Auction shall at least be equal to the sum of the following:  (w) the dollar value of the cash consideration contained in such Bid, (x) the dollar value of any additional consideration contained in such Bid, (y) the dollar value of the Breakup Fee, and (z) the dollar value of the Expense Reimbursement), (collectively, the "Bid Assessment Criteria").   For avoidance of doubt, the Highest and Best Bid must include cash in an amount no less then the Minimum Cash Amount (it being agreed that the Minimum Cash Amount for Purchaser shall be reduced by the dollar value of the Expense Reimbursement and Breakup Fee).  If no Qualified Bid (other than the Asset Purchase Agreement) is received by the Bid Deadline, the Debtors may determine not to conduct the Auction.  Unless otherwise agreed to by the Proposed Purchaser in its sole discretion, only Qualified Bidders may participate in the Auction.

The Auction shall take place on February 18, 2010 at 10:00 a.m. (prevailing Eastern Time) at the offices of Berger Singerman, P.A., 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, Florida 33301, or such other place and time as the Debtors shall notify all Qualified Bidders, including the Proposed Purchaser, the Committee, counsel for the Proposed Purchaser and other invitees in accordance with the Asset Purchase Agreement. The Auction shall be conducted according to the following procedures:

(k)      The Debtors Shall Conduct the Auction.

The Debtors and their professionals shall direct and preside over the Auction.  At the start of the Auction, the Debtors shall describe the terms of the highest and best Qualified Bid received prior to the Bid Deadline, (such Qualified Bid the "Auction Baseline Bid").  Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or sale of the Acquired Assets.

The Proposed Purchaser shall be permitted to credit bid the full amount of the Expense Reimbursement and the Breakup Fee pursuant to any Overbid in connection with each round of bidding.

Only the Debtors, representatives of the Senior Lenders and their counsel, members of the Committee and its counsel, the Proposed Purchaser and any other Qualified Bidder, in each case, along with their representatives, shall attend the Auction in person, and only the Proposed Purchaser and such other Qualified Bidders will be entitled to make any Bids at the Auction.

(l)     Terms of Overbids.

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

(i)     Minimum Overbid Increment.

Any Overbid after the Auction Baseline Bid shall be made in increments valued at not less than $100,000.  Additional consideration in excess of the amount set forth in the Auction Baseline Bid may include cash and/or noncash consideration, and, in the case of a Bid by the Proposed Purchaser, a credit bid of the Expense Reimbursement and the Breakup Fee.

(ii)     Remaining Terms Are the Same as for Qualified Bids.

Except as modified herein, an Overbid must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply.  Any Overbid must remain open and binding on the Bidder until and unless the Debtors accept a higher Overbid.

To the extent not previously provided (which shall be determined by the Debtors), a Bidder submitting an Overbid must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) demonstrating such Bidder's ability to close the Competing Transaction proposed by such Overbid.

(iii)     Announcing Overbids.

The Debtors shall announce at the Auction the material terms of each Overbid, the basis for calculating the total consideration offered in each such Overbid and the resulting benefit to the Debtors' estates based on, inter alia, the Bid Assessment Criteria.

(iv)     Consideration of Overbids.

The Debtors reserve the right, in their reasonable business judgment to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Bidders; allow individual Bidders to consider how they wish to proceed; and give Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors in their reasonable business judgment may require, that the Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Competing Transaction at the prevailing Overbid amount.

6

(m)     Backup Bidder.

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the party with the next highest or otherwise best Qualified Bid at the Auction, as determined by the Debtors, in the exercise of their business judgment, will be designated as the potential backup bidder (the "Potential Backup Bidder"). In the event that a Qualified Bidder other than the Proposed Purchaser is identified by the Debtors as the Potential Backup Bidder, such party shall be required to serve as the backup bidder (the "Backup Bidder"). If the Proposed Purchaser is determined to be the Potential Backup Bidder, the Proposed Purchaser may, in its sole discretion, elect not to serve as the Backup Bidder, and the Debtors may identify the Qualified Bidder with the next highest or otherwise best Qualified Bid, if any, as the Backup Bidder. The Backup Bidder shall be required to keep its initial Bid (or if the Backup Bidder submitted one or more Overbids at the Auction, its final Overbid) (the "Backup Bid") open and irrevocable until the earlier of 5:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of the Auction (the "Outside Backup Date") or the closing of the transaction with the Successful Bidder (defined herein). Following the Sale Hearing, if the Successful Bidder (defined herein) fails to consummate an approved transaction, because of a breach or failure to perform on the part of such Successful Bidder (defined herein), the Debtors may designate the Backup Bidder to be the new Successful Bidder (defined herein), and the Debtors will be authorized, but not required, to consummate the transaction, with the Backup Bidder without further order of the Bankruptcy Court. In such case, the defaulting Successful Bidder's deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder (defined herein). The deposit of the Backup Bidder shall be held by the Debtors until the earlier of 24 hours after (i) the closing of the transaction with the Successful Bidder (defined herein) and (ii) the Outside Backup Date.

(n)     Additional Procedures.

The Debtors may announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time to make subsequent Overbids) for conducting the Auction so long as such rules are not inconsistent with these Bidding Procedures or the Asset Purchase Agreement.

(o)     Consent to Jurisdiction as Condition to Bidding.

The Proposed Purchaser, all Qualified Bidders and all Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Asset Purchase Agreement, the Auction or the construction and enforcement of any Competing Transaction Documents.

(p)     Sale Is As Is/Where Is.

The Acquired Assets shall be conveyed at Closing free and clear of all liens, claims, interests and encumbrances, and in their then present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.**"

(q)      Closing the Auction.

The Auction shall continue until there is only one Qualified Bid that the Debtors determine in their reasonable business judgment, after consultation with their financial and legal advisors and the Committee, is the highest and best Qualified Bid at the Auction (the "Successful Bid" and the Bidder submitting such Successful Bid, the "Successful Bidder"). In making this decision, the Debtors, in consultation with their financial and legal advisors, shall consider the Bid Assessment Criteria. The Auction shall not close unless and until all Bidders who have submitted Qualified Bids have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid and the Successful Bidder has submitted fully executed sale and transaction Documents memorializing the terms of the Successful Bid.

The Debtors shall not consider any Bids submitted after the conclusion of the Auction.

## Bid Protections

The Proposed Purchaser is entitled to: (a) the Breakup Fee in the amount of $320,000; and (b) the Expense Reimbursement, in each case, pursuant to the terms of the Asset Purchase Agreement.

Except for the Proposed Purchaser, no other party submitting an offer or Bid for the Acquired Assets or a Qualifying Bid shall be entitled to any expense reimbursement, breakup fee, termination or similar fee or payment.

## Sale Hearing

The Court will conduct a hearing (the "Sale Hearing") on **February 19, 2010 at 9:30 a.m.**, at which the Debtors will seek approval of the transactions contemplated by the Asset Purchase Agreement with the Successful Bidder. Objections, if any, to the sale of the Acquired Assets to the Successful Bidder and the transaction contemplated by the Asset Purchase Agreement must be in writing and filed with the Court no later than 4:00 p.m. (prevailing Eastern time) on **February 15, 2010** and be served such that they are actually received by (a) counsel to the Debtors, Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn:  Jordi Guso, Esq.; (b) counsel to the Committee; (c) counsel to the Proposed Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick Nash and Paul Wierbicki and Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida 33131, Attn: Scott Grossman; and (d) the Office of the United States Trustee.

## Return of Good Faith Deposit

The Good Faith Deposits of all Qualified Bidders shall be held in one or more interest-bearing escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Court. The Good Faith Deposit of any Qualified Bidder that is neither the Successful Bidder nor the Backup Bidder shall be returned to such Qualified Bidder not later than two (2) business days after the Sale Hearing. The Good Faith Deposit of the Backup Bidder shall be returned to the Backup Bidder on the date that is the earlier of 24 hours after (a) the

8

closing of the transaction with the Successful Bidder (defined herein) and (b) the Outside Backup Date. Upon the return of the Good Faith Deposits, their respective owners shall receive any and all interest that will have accrued thereon. If the Successful Bidder timely closes the winning transaction, its Good Faith Deposit shall be credited towards its purchase price.

## Reservation of Rights

Except as otherwise provided in the Asset Purchase Agreement or the Sale Order, the Debtors further reserve the right as they may reasonably determine to be in the best interest of their estates, in consultation with the Committee, to: (a) determine which bidders are Qualified Bidders; (b) determine which Bids are Qualified Bids; (c) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal; (d) reject any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (iii) contrary to the best interests of the Debtors and their estates; (e) remove some or all of the Acquired Assets from the Auction; (f) waive terms and conditions set forth herein with respect to all potential bidders; (g) impose additional terms and conditions with respect to all potential bidders; (h) extend the deadlines set forth herein; (i) continue or cancel the Auction and/or Sale Hearing in open court without further notice; and (j) modify the Bidding Procedures as they may determine to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice.

K&E 16139699.6

2560075-2

**EXHIBIT 2 to the Bidding Procedures Order**

**(Sale Notice)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| PROTECTIVE PRODUCTS OF AMERICA, INC. et al.,[1] | Case No. 10-10711-BKC-JKO |
| Debtors. | Jointly Administered |

Auction:  February 18, 2010 at 10:00 a.m. ET
Sale Objection Deadline:  February 15, 2010 at
    4:00 p.m. ET
Sale Hearing:  February 19, 2010 at  9:30 a.m.
    ET

_____/

**NOTICE OF AUCTION AND SALE HEARING**

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

       1.      On January 13, 2010, Protective Products of America,, Inc., and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), filed their Motion[2] for entry of an order (the "Bidding Procedures Order"), among other things, (a) approving Bidding Procedures for the sale of substantially all of the assets owned by the Debtors (the "Acquired Assets"), as described in the Asset Purchase Agreement by and between Protective Products Enterprises, Inc. (the "Proposed Purchaser") and the Debtors dated as of January 13, 2010 (the "Asset Purchase Agreement"); (b) approving the Asset Purchase Agreement and payments to the stalking horse bidder thereunder; (c) approving the form and manner of notice of the auction on the Acquired Assets and the Sale Hearing; (d) approving procedures relating to the assumption and assignment of contracts and leases; and (e) scheduling a sale hearing (the "Sale Hearing") to consider the sale of the Acquired Assets and setting objection and bidding deadlines with respect to the Sale.   The Motion additionally requests entry of an order (the "Sale Order") approving (i) the sale of the Acquired Assets free and clear of liens, claims, encumbrances and interests contemplated by the Asset Purchase

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Protective Products of America, Inc. (9709); CPC Holding Corporation of America (8086); Ceramic Protection Corporation of America (7305); Protective Products International Corp. (7373); and Protective Products of North Carolina, LLC (0927).   The mailing address of each of the Debtors is 1649 Northwest 136th Avenue, Sunrise, Florida 33323.

[2]    Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Agreement; (ii) assumption and assignment of certain executory contracts and unexpired leases; and (iii) certain related relief.

2.     On January [__] 2010, the United States Bankruptcy Court for the Southern District of Florida entered the Bidding Procedures Order [DE # 19]. Pursuant to the Bidding Procedures Order, the auction for the Acquired Assets shall take place on **February 18, 2010 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Berger Singerman, P.A., 350 East Las Olas Boulevard, Suite 1000, Fort Lauderdale, Florida 33301.  Only parties that have submitted a Qualified Bid in accordance with the Bidding Procedures, attached to the Bidding Procedures Order as Exhibit 1, by no later than **February 15, 2010 at 4:00 p.m. (Eastern Time)** (the "Bid Deadline") may participate at the auction.  Any party that wishes to take part in this process and submit a bid for the Acquired Assets must submit their competing bid prior to the Bid Deadline and in accordance with the Bidding Procedures.  Parties interested in receiving information regarding the sale of the Acquired Assets should contact the Debtors' investment bankers, Bayshore Partners, LLC, 401 East Las Olas Boulevard, Suite 1160, Fort Lauderdale, Florida 33301, Attn:  Scott S. Saunders and Steve Zuckerman, Telephone: (954) 358-3800, Email: ssaunders@farlieturner.com and/or szuckerman@farlieturner.com.

3.     The Sale Hearing to consider approval of the Sale of the Acquired Assets to the Proposed Purchaser or Successful Bidder (as defined in the Bidding Procedures) free and clear of all liens, claims and encumbrances will be held before the Honorable John K. Olson, United States Bankruptcy Judge, 299 East Broward Boulevard, Courtroom 301, Fort Lauderdale, Florida 33301 on **February 19, 2010 at 9:30 a.m. (prevailing Eastern Time)**, or at such earlier date as counsel may be heard.  The Sale Hearing may be continued from time to time without further notice to creditors or parties in interest other than by announcement of the continuance in open court on the date scheduled for the Sale Hearing (or in agenda).

4.     Objections, if any, to the sale of the Acquired Assets contemplated by the Asset Purchase Agreement, or the relief requested in the Motion (including with respect to cure amounts and adequate assurance) must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Rules; (c) be filed with the clerk of the Bankruptcy Court for the Southern District of Florida, 299 East Broward Boulevard, Room 112, Fort Lauderdale, Florida 33301 (or filed electronically via CM/ECF), on or before **4:00 p.m. (prevailing Eastern Time) on February 15, 2010**, or such earlier date and time as the Debtors may agree and (d) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day, upon:  (i) counsel to the Debtors, Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn:  Jordi Guso; (ii) counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"); (iii) counsel to the Proposed Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick Nash and Paul Wierbicki and Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida 33131, Attn: Scott Grossman; and (iv) the Office of the United States Trustee.

5.     In the event that the Proposed Purchaser is not the Successful Bidder at the Auction, the non-Debtor party to any Scheduled Contract(s) will have until the Sale Hearing to object to the Successful Bidder's ability to perform under such Scheduled Contract(s).

2

6.     This Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties in interest to review such documents in their entirety.  Copies of the Motion, the Asset Purchase Agreement, the Bidding Procedures, and/or the Bidding Procedures Order may be obtained by written request to counsel to the Debtors, c/o Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn:  Jordi Guso.  In addition, copies of the aforementioned pleadings may be found on the Pacer's website, http://ecf.flsb.uscourts.gov, and are on file with the Clerk of the Bankruptcy Court, 299 East Broward Boulevard, Room 112, Fort Lauderdale, Florida 33301.

Dated: January __, 2010

Respectfully submitted,

BERGER SINGERMAN, P.A.
*Counsel for the Debtors*
200 South Biscayne Boulevard, Suite 1000
Miami, FL  33131
Telephone:  (305) 755-9500
Facsimile:   (305) 714-4340

By:  /s/  Jordi Guso
        Jordi Guso
        Florida Bar No. 863580
        jguso@bergersingerman.com

3

**EXHIBIT 3 to the Bidding Procedures Order**

**(Cure Notice)**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
## www.flsb.uscourts.gov

In re:                                               Chapter 11

PROTECTIVE PRODUCTS OF                               Case No. 10-10711-JKO
AMERICA, INC. et al.,[1]

                 Debtors.                Jointly Administered
_____/

## NOTICE TO COUNTERPARTIES TO POTENTIALLY ASSUMED
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES[2]

     **PLEASE TAKE NOTICE** that on January 13, 2010, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") filed a motion [DE # 19] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") which seeks approval of key dates, times and procedures related to the sale of substantially all of the Debtors' assets (the "Acquired Assets") to Protective Products Enterprises, Inc. (the "Proposed Purchaser") contemplated by the Asset Purchase Agreement. On January [__], 2010, the Bankruptcy Court approved the Bidding Procedures.   On February 19, 2010, the Debtors intend to seek approval of, among other things, the sale of the Acquired Assets, including the assumption and assignment of certain executory contracts and unexpired leases.    To the extent that there are any inconsistencies between the Bidding Procedures and the summary description of the terms and conditions contained in this Notice, the terms of the Bidding Procedures shall control.

     **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR**

---

[1]    The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:   Protective Products of America, Inc. (9709); CPC Holding Corporation of America (8086); Ceramic Protection Corporation of America (7305); Protective Products International Corp. (7373); and Protective Products of North Carolina, LLC (0927).   The mailing address of each of the Debtors is 1649 Northwest 136th Avenue, Sunrise, Florida 33323.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

**UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**[3]

      **PLEASE TAKE FURTHER NOTICE** that pursuant to the Bidding Procedures, the Debtors **may** assume and assign to the Proposed Purchaser the executory contract(s) or unexpired lease(s) listed on Exhibit A attached hereto (each, an "Scheduled Contract") to which you are a counterparty. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Scheduled Contract is as set forth on Exhibit A attached hereto (the "Cure Amount"). **If you disagree with the proposed Cure Amount, object to the proposed assignment to the Proposed Purchaser of the Scheduled Contract(s) or object to the Proposed Purchaser' ability to provide adequate assurance of future performance with respect to any Scheduled Contracts, you must file an objection with the Bankruptcy Court no later than 4:00 p.m. (prevailing Eastern Time) on February 15, 2010, (the "Objection Deadline") and serve such objection on (a) the Debtors, Protective Products of America, Inc., 1649 Northwest 136th Avenue, Sunrise, Florida, 33323; (b) counsel for the Debtors, Berger Singerman, P.A., 200 South Biscayne Boulevard, Suite 1000, Miami, Florida 33131, Attn: Jordi Guso, Esq.; (c) counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"); (d) counsel to the Proposed Purchaser, Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois, 60654, Attn: Patrick Nash and Paul Wierbicki and Greenberg Traurig, P.A., 1221 Brickell Avenue, Miami, Florida 33131, Attn: Scott Grossman; and (e) the Office of the United States Trustee, so that it is actually received no later than 4:00 p.m. (prevailing Eastern Time) on February 15, 2010.**

      **PLEASE TAKE FURTHER NOTICE** that the Debtors propose that if no objection to (a) the Cure Amount(s), (b) the proposed assignment of the Scheduled Contract(s) to the Proposed Purchaser or (c) adequate assurance of the Proposed Purchaser' ability to perform is filed by Objection Deadline, (i) you will be deemed to have stipulated that the Cure Amount(s) as determined by the Debtors is correct, (ii) you shall be forever barred, estopped and enjoined from asserting any additional cure amount under the Scheduled Contract(s) and (iii) you will be forever barred from objecting to the assignment of the Assumed Executory Contract(s) to the Proposed Purchaser adequate assurance of future performance.

      **PLEASE TAKE FURTHER NOTICE** that in the event the Proposed Purchaser is not the Successful Bidder at the Auction, any counterparty to a Scheduled Contract shall have the right to object to the Successful Bidder's ability to perform on or before the Sale Hearing scheduled for February 19, 2010 at 9:30 a.m. (prevailing Eastern Time). To the extent such counterparty does not object in accordance herewith, the Bankruptcy Court may enter an order forever barring such counterparty to a Scheduled Contract from objecting to the adequate assurance of the Successful Bidder's ability to perform.

---

[3]   This Notice is being sent to counterparties to Executory Contracts and Unexpired Leases. This Notice is not an admission by the Debtors that such contract or lease is executory or unexpired.

PLEASE TAKE FURTHER NOTICE that with respect to any Scheduled Contract assumed and assigned to the Successful Bidder (including the Proposed Purchaser), all Cure Amounts shall be satisfied by payment of the Cure Amounts as soon as reasonably practicable after Bankruptcy Court approval of the sale of the Acquired Assets to the Successful Bidder (including the Proposed Purchaser) or on such other terms as the parties to each such Scheduled Contract may otherwise agree without any further notice to or action, order or approval of the Bankruptcy Court.  In addition, the assumption of each such Scheduled Contract may be conditioned upon the disposition of all issues with respect to such Scheduled Contract.

PLEASE TAKE FURTHER NOTICE that pursuant to the Bidding Procedures, with respect to any Scheduled Contract, in the event of a dispute regarding: (a) the amount of any Cure Amount; (b) the ability of the Successful Bidder (including the Proposed Purchaser) to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under such Scheduled Contract; or (c) any other matter pertaining to assumption, the Cure Amounts shall be paid as soon as reasonably practicable following the entry of a final order resolving the dispute and approving the assumption of such Scheduled Contract; provided, however, that the Debtors may settle any dispute regarding the amount of any Cure Amount or assignment to the Successful Bidder (including the Proposed Purchaser) without any further notice to or action, order or approval of the Bankruptcy Court.

PLEASE THAT FURTHER NOTICE THAT notwithstanding anything herein, this Notice shall not be deemed to be an assumption, adoption, rejection or termination of the Scheduled Contracts.  Moreover, the Debtors explicitly reserve their rights, in their sole discretion, to reject or assume each Scheduled Contract pursuant to section 365(a) of the Bankruptcy Code and nothing herein (a) alters in any way the prepetition nature of the Scheduled Contracts or the validity, priority or amount of any claims of a counterparty to an Scheduled Contract against the Debtors that may arise under such Scheduled Contract, (b) creates a postpetition contract or agreement or (c) elevates to administrative expense priority any claims of an counterparty to an Scheduled Contract against the Debtors that may arise under such Scheduled Contract.

Dated: January __, 2010    Respectfully submitted,

           BERGER SINGERMAN, P.A.
           *Counsel for the Debtors*
           200 South Biscayne Boulevard, Suite 1000
           Miami, FL  33131
           Telephone:  (305) 755-9500
           Facsimile:  (305) 714-4340

           By:  /s/  Jordi Guso
              Jordi Guso
              Florida Bar No. 863580
              jguso@bergersingerman.com

K&E 16139699.6

2560075-2

## EXHIBIT A

[Counterparty Name]                [Contract/Lease]                        Cure Amount

**EXHIBIT 4 to the Bidding Procedures Order**

**(Assumption Notice)**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
### www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| PROTECTIVE PRODUCTS OF AMERICA, INC. et al.,[1] | Case No. 10-10711-BKC-JKO |
| Debtors. | Jointly Administered |

_____/

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF EXECUTORY CONTRACT OR UNEXPIRED LEASE

**PLEASE TAKE NOTICE THAT**:

1.       A hearing (the "Sale Hearing")[2] was held at 9:30 a.m. on February 19, 2010 before the Honorable John K. Olson, United States Bankruptcy Judge, in the Bankruptcy Court, 299 East Broward Boulevard, Room **[TO COME]**, Fort Lauderdale, Florida 33301.  At the Sale Hearing, the Bankruptcy Court entered an order (the "Sale Order") (a) approving the sale of the Acquired Assets to Protective Products Enterprises, Inc. (the "Purchaser") in accordance with the Asset Purchase Agreement, and (b) authorizing, among other things, the Debtors, pursuant to the terms of the Asset Purchase Agreement, to assume and assign the Assumed Executory Contracts to the Purchaser, as defined in the Asset Purchase Agreement.

2.       Pursuant Section 2.6(c) of the Asset Purchase Agreement, the Purchaser was permitted, up to ninety (90) days after the closing of the sale of the Acquired Assets to the Purchaser, to designate additional Assumed Executory Contracts (collectively, the "Assumed Designated Contracts").

3.       The Purchaser has elected to take assignment of the contracts and leases as set forth on Exhibit A hereto.

_____

[1]      The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are as follows:  Protective Products of America, Inc. (9709); CPC Holding Corporation of America (8086); Ceramic Protection Corporation of America (7305); Protective Products International Corp. (7373); and Protective Products of North Carolina, LLC (0927).  The mailing address of each of the Debtors is 1649 Northwest 136th Avenue, Sunrise, Florida 33323.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Bidding Procedures or the Bidding Procedures Order, as applicable.

## EXHIBIT A

| [Counterparty Name/Address] | [Contract/Lease] | Cure Amount |
| --- | --- | --- |