

**ORDERED in the Southern District of Florida on February 17, 2010.**

_____
John K. Olson, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
**www.flsb.uscourts.gov**

In re:

PROTECTIVE PRODUCTS OF          Case No. 10-10711-BKC-JKO
AMERICA, INC., *et al.*,[1]              Chapter 11 Cases
                                         (Jointly Administered)

         Debtors.
_____/

**FINAL ORDER APROVING DEBTORS' APPLICATION FOR APPROVAL**
**OF EMPLOYMENT OF BAYSHORE PARTNERS, LLC AS INVESTMENT**
**BANKERS TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

**THIS MATTER** having come before the Court on the 10th day of February, 2010 at 2:30 p.m. in Fort Lauderdale, Florida upon the final hearing to consider the *Debtors' Application For Approval of Employment of Bayshore Partners, LLC as Investment Bankers to the Debtors Nunc Pro Tunc to Petition Date* (the "Application") (D.E. No. 8), and the *Affidavit of Michael F. Turner in Support of the Debtors' Application for Interim*

---

[1] The name and last four digits of the taxpayer identification number for each of the Debtors follows in parenthesis: (i) Protective Products of America, Inc. (9709); (ii) CPC Holding Corporation of America (8086); (iii) Ceramic Protection Corporation of America (7305); (iv) Protective Products International

2624252-1

*and Final Order Approving the Employment of Bayshore Partners, LLC as Investment Bankers to the Debtors in Possession Nunc Pro Tunc to the Petition Date* (the "Turner Declaration") attached to the Application as **Exhibit "A."** After conducting a hearing on the Application on January 14, 2010, the Court entered an Order granting the Application on an interim basis (the "Interim Order") (D.E. No. 52), and scheduled a final hearing on the Application for February 10, 2010. The Application requests entry of an order approving the Debtors' employment of Bayshore Partners, LLC to represent them as investment bankers in these Chapter 11 cases. The Court has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 18 U.S.C. § 157(b)(2)(A). The relief requested in the Application is in the best interests of the Debtors, their estates, and their creditors. The Turner Declaration makes relevant disclosure as required by Fed. R. Bankr. P. 2014 and Fed. R. Bankr. P. 2016. The Court has reviewed the Turner Declaration which contains a verified statement as required by Fed.R.Bankr.P. 2014 demonstrating that Michael F. Turner and Bayshore Partners, LLC are disinterested as required by 11 U.S.C. § 327(a). Pursuant to 11 U.S.C. § 327(a), and Fed. R. Bankr. P. 2014(a), the Court is authorized to approve the relief requested in the Application. Upon the record herein, and after due deliberation thereon, good and sufficient cause exists for the approval of the relief as set forth herein. Accordingly, it is hereby **ORDERED** as follows:

  1.  The Application is **APPROVED**.

---

Corp. (7373); and (v) Protective Products of North Carolina, LLC (0927). The address for the Debtors is 1649 NW 136th Avenue, Sunrise, FL 33323.

2624252-1

2. The employment of Bayshore Partners, LLC ("Bayshore Partners") as investment bankers for the debtors-in-possession is **APPROVED** on a final basis pursuant to 11 U.S.C. §§ 327(a) and 328(a), *nunc pro tunc* to the Petition Date.

3. Capitalized terms not otherwise defined herein have the meanings given to them in the Application or the Bayshore Agreement, as the case may be.

4. Bayshore Partners shall be compensated in the manner set forth in the Application for services rendered and costs incurred on behalf of the Debtors in accordance with 11 U.S.C. § 328(a).

5. Notwithstanding any agreement(s) between the Debtors and any pre- or postpetition secured lenders, or Order of this Court relating to the enforceability, priority or security of any pre-petition or post-petition claim (whether of the Debtor's pre- or post-petition lenders or otherwise), the lender(s) or claimant(s) right to payment of their debt (whether principal, interest or other costs or charges), and any other recovery of their claims against the Debtors, their assets and any proceeds thereof, shall be fully subordinate to the payment in full and in cash, of all Monthly Advisory and Transaction Fees and out of pocket expenses due Bayshore Partners under the Bayshore Agreement, except for any Excluded Transaction Fee.  Further, any Transaction Fee payable pursuant to the Bayshore Agreement shall be paid from the proceeds of the Transaction (as a cost of such Transaction) free and clear of any lien, claim or interest that any creditor or claimant may possess in the relevant assets sold or the proceeds received in connection with such Transaction.  For purposes hereof, Excluded Transaction Fee means any Transaction Fee that Bayshore may claim (a) was fully earned and payable

prior to the Petition Date or (b) by virtue of CIBC's agreement to provide financing to any of the Debtors following the Petition Date.

6. Under the proposed stalking horse transaction, as modified by the Amended and Restated Asset Purchase Agreement dated February 4, 2010 and approved by the Court on February 10, 2010, or any alternative Transaction for substantially all of the Debtors' assets, which contemplates a purchase price below $10,000,000 (excluding any estimated or actual sharing of tax refund proceeds), Bayshore Partners shall be (a) paid a fixed Transaction Fee of $300,000 immediately upon the closing ("Minimum Transaction Fee") in complete satisfaction of any claim by Bayshore for payment of a Transaction Fee and (b) reimbursed for its out of pocket expenses. To the extent the purchase price for substantially all of the Debtors' assets increases as a result of competitive bidding, Bayshore Partners shall be paid 3% of the purchase price in excess of $10,000,000 (excluding any estimated or actual recovery from a sharing of tax refund proceeds), which, for avoidance of doubt, shall be additive to its Minimum Transaction Fee. Bayshore Partners agrees to apply any funds held as a Retainer (approximately $12,000 as of February 11, 2010) as a credit against any Transaction Fee. Bayshore Partners shall not be entitled to payment of any Transaction Fee arising from the collection by the Debtors, or any successors thereto including any trustee appointed under the Bankruptcy Code, of tax refunds payable to one or more of the Debtors, unless the collection of such tax refunds is part of a separate Transaction (other than the presently proposed sale to the stalking horse bidder or any party submitting a higher or better offer). Unless extended by a separate agreement approved by the Bankruptcy Court, Bayshore Partners' retention (and its right to receive a Monthly Fee) shall

terminate immediately following the closing of the Transaction, provided that such termination shall not impair Bayshore's right to payment of any Transaction Fee, Monthly Fee or expenses owed or outstanding prior thereto.

7. The portion of the DIP Budget Professionals Carveout allocable to the Creditors Committee shall be increased by an amount equal to the lesser of (a) $37,500 or (b) the difference, if any, between (i) $325,000 and (ii) the number resulting from adding $300,000 to the amount of the out of pocket expenses payable to Bayshore, and subtracting the amount of the Retainer to be applied by Bayshore against the Minimum Transaction Fee.

8. Bayshore Partners shall use good faith efforts to facilitate a transaction that is acceptable to all constituents.

9. The Court retains jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

# # #

Submitted by:
Jordi Guso, Esq.
BERGER SINGERMAN, P.A.
200 S. Biscayne Blvd., 10th Floor
Miami, FL 33131
Tel. (305) 755-9500
Fax (305) 714-4340
jguso@bergersingerman.com

Copies to:
Jordi Guso, Esq.
*(Attorney Guso shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)*

2624252-1